GEORGIA CASUALTY CO. *v.* ALDEN MILLS.

(Division B. March 31, 1930. Suggestion of Error Overruled May 5, 1930.)

[127 So. 555. No. 28566.]

**Amis, Dunn & Snow,** of Meridian, for appellant.

Bozeman & Cameron, of Meridian, for appellee.

855

Butler & Snow, as amicus curiae.

Argued orally by **Ed. Snow**, for appellant, and **Geo. Butler**, amicus curiae.

**Anderson, J.**, delivered the opinion of the court.

This is an appeal from the circuit court of Lauderdale county, from a judgment in favor of appellee, the Alden Mills, and against appellant, the Georgia Casualty Company, the amount of the judgment being one thousand three hundred sixty-six dollars and sixty cents, and six per cent interest thereon from August 24, 1928.

Appellee's declaration was in two counts: The first count was based on what is commonly known as an employers' indemnity policy of insurance. By its terms, appellant undertook to indemnify the appellee, a hosiery mill, against loss arising or resulting from claims upon the appellee for damages on account of bodily injuries accidentally suffered by any employees of appellee during the life of the policy, including death resulting therefrom, by reason of the operation of said business; and to defend any suits brought by employees to recover for such injuries. The second count of the declaration was based on what is commonly known as a public liability indemnity insurance policy, by the terms of which policy appellant undertook to indemnify appellee against loss arising or resulting from claims upon appellee for dam-

ages on account of bodily injuries accidentally suffered during the life of the policy, including death therefrom, of any person or persons not employed by appellee, by reason of the operation of its hosiery mill, while within or upon appellant's premises, or upon the sidewalks, or any other place immediately adjacent thereto, provided such injury had been caused by reason of the business operations of such hosiery mill; and to defend and pay the cost of any suit against appellee growing out of such injury..

The declaration alleged that Joe Pendergraft had previously brought suit against appellee in the circuit court of Lauderdale county to recover damages from appellee for an assault and battery committed on him by two of appellee's foremen; and that upon trial of the suit a judgment was rendered in favor of Pendergraft in the sum of six hundred ninety-seven dollars and twenty cents; that appellee paid the sum of five hundred twenty-five dollars attorney's fee for defending that suit; that he paid twenty-three dollars premium on an appeal bond required in appealing the case to the supreme court; and three hundred twenty-four dollars and forty cents for witness fees and expenses incident to the trial—the whole aggregating one thousand six hundred seventy-four dollars and ten cents.

Attached to the declaration, as an exhibit thereto, was the declaration in the Pendergraft case, and the judgment in that case which was affirmed by the supreme court. Alden Mills v. Pendergraft, 149 Miss. 595, 115 So. 713. To the declaration appellant pleaded the general issue, and gave notice thereunder that on the trial of the case it would introduce evidence to prove that the injuries received by Pendergraft, for which he had sued and recovered judgment against appellee, were caused proximately and solely by a willful, malicious, and unlawful assault and battery by appellee, through its officers and agents, on the person of Pendergraft, and that

appellant did not, by either of the policies of insurance sued on, undertake in any degree to indemnify appellee for any loss or expense it should sustain by reason of its said malicious and unlawful assault and battery; and that appellant would introduce evidence to prove that appellee's day and night foremen, in making the assault and battery upon Pendergraft, thereby inflicting the injury for which he sued and recovered judgment against the appellee, were not engaged in the legitimate business regularly conducted by appellee, as set out and described in the policies of insurance sued on—that such assault and battery were not made, and the consequent injury to Pendergraft was not caused by the operation of appellee's hosiery mill, as provided in the contracts of insurance. The cause was tried on agreed facts, as follows:

"1. The plaintiff, Alden Mills, is a corporation organized under the laws of the state of Louisiana, and was on and before the 8th day of October, 1926, engaged in the operation of hosiery mills, including yarn manufacturing in Meridian, Lauderdale county, Mississippi.

"2. The defendant, Georgia Casualty Company, is a corporation organized under the laws of the state of Georgia, and was on and before the 31st day of May 1926, engaged in the business of issuing indemnity insurance, and on said date issued and delivered to the plaintiff, Alden Mills, policies or contracts of insurance, copies of which are attached hereto and that said policies or contracts were in force on the 8th day of October 1926, and during the entire month of October, 1926.

"3. That suit was brought in the circuit court of Lauderdale county, Mississippi, by Joe Pendergraft as alleged in the declaration against the Alden Mills, and that the notice of the filing of said suit was duly given by the plaintiff herein to the defendants, Georgia Casualty Company. And that the defendant, Georgia Casualty Company, refused to defend the suit, contending that the injuries complained of by Pendergraft were not

such as were covered by the terms of the policies or contracts of indemnity issued by the defendant and held by the plaintiff, as set forth in letter to Alden Mills dated December 1, 1926, attached hereto. Thereupon the Alden Mills employed counsel and defended the suit. The trial of the case resulted in a judgment being rendered by said court in favor of Pendergraft against the Alden Mills, on April 9, 1927, for six hundred thirty dollars and the costs of suit amounting to one hundred seventy-three dollars and thirty-five cents, the Alden Mills appealed from the judgment of the circuit court to the supreme court, and the judgment was affirmed, and that the damages and interest accruing on the judgment amounted to seventy-seven dollars and twenty cents, and the court costs of the appeal amounted to one hundred forty-eight dollars and five cents, and premium on appeal bond thirteen dollars. That the Alden Mills paid all of said items and in addition thereto paid attorneys' fees for defending said suit, amounting to three hundred twenty-five dollars. It is agreed that the amount paid attorneys was reasonable. It is further understood that this agreement shall not prejudice the right of the Alden Mills to prove any other items of loss or damage, if any.

"4. That the damages on account of bodily injuries forming the basis of said suit were suffered by the said Joe Pendergraft while within and upon the premises described in the schedules contained in said policies; and that the said Joe Pendergraft was a person whose compensation was, at the time of such damages and injuries, included in the estimated compensation set forth in said schedules in policy No. EL 6726, that the said damages and injuries sustained and claimed by said Joe Pendergraft were caused by persons whose compensation was included at said time in the estimated compensation set forth in said schedules in policy No. PL 5089; and that the said Alden Mills is not precluded or stopped from maintaining this suit by reason of any of the conditions

or exceptions set forth in conditions A through M inclusive of said policy No. EL 6726 and conditions A through L inclusive of said policy No. PL 5089.

"5. That the supreme court of Mississippi entered a final judgment in said suit, affirming the judgment of the circuit court of Lauderdale county, Mississippi, and awarding said Joe Pendergraft the amounts, by way of judgment, costs, damages, etc., as set forth in paragraph number 3, supra, which were paid by plaintiff.

"6. Either party to the suit may introduce, as evidence, any part of the record and proceedings, including the transcript of the testimony of witnesses, in the suit styled Joe Pendergraft v. Alden Mills, No. 1707 of the files of the circuit court of Lauderdale county, which is the cause hereinfore referred to.

"7. That the parties hereto do not waive any right of objection or exception, to any matters herein set out, but agree that subject to their competency, relevancy and materiality such facts may be considered as proven in the trial of the case, and that such parts, or all of the record, including the testimony of witnesses as transcribed, and may, subject to the objection, be introduced by either party, and that in so doing the copy of the transcript of said proceedings on file in the office of the circuit clerk of said county may be used."

In pursuance of the above agreement by the parties, the entire record, including the evidence, in the case of Joe Pendergraft against appellee, was introduced in evidence. The court directed a verdict for appellee in the amount for which judgment was rendered, and refused appellant's request for a directed verdict.

The policies sued on cover "damages on account of bodily injuries *accidentally* suffered." (Italics ours.) The gravamen of the Pendergraft suit was that Burt, one of appellee's foremen, in the furtherance of appellee's business, without any provocation on the part of Pendergraft, committed a willful and malicious assault

on the latter. The evidence on behalf of the plaintiff tended to establish the facts charged, and the jury necessarily so found in their verdict.

Appellant contends that the assault on Pendergraft, having been willfully and intentionally inflicted by appellee's foreman, was not covered by the policies, because they provided indemnity only for "injuries accidentally suffered." The question, therefore, is whether a person who has been assaulted and injured by another, without any provocation on his part, has suffered an accidental injury. There is a diversity of opinion on this question among the courts, but the great weight of authority, and we think the better reasoned cases, holds that injuries sustained by a person while defending himself from an unprovoked assault are within the terms of a policy insuring him against injury accidentally inflicted—that an injury inflicted on one who did not voluntarily enter into the affray in which he was injured is an accident. Fidelity Co. v. Johnson, 72 Miss. 333, 17 So. 2, 3, 30 L. R. A. 206; Stephens v. Ry. Co., 75 Miss. 84, 21 So. 710; Hutson v. Continental Casualty Co., 142 Miss. 388, 107 So. 520; Holmes v. American, etc., Ins. Co., 142 Miss. 636, 107 So. 867; Provident, etc., Co. v. McWilliams, 146 Miss. 298, 112 So. 483; Great Southern, etc., v. Campbell, 148 Miss. 173, 114 So. 262; 56 A. L. R. 681; 14 R. C. L. 1255. Fidelity Co. v. Johnson, supra, was a suit on an accident policy insuring against "bodily injuries sustained through external, violent, and accidental means." The insured was hanged by a mob. It was contended that the hanging was an intentional injury, and therefore not an accidental injury. The court held against that contention, and, in discussing the question, used this language:

"In these and all like cases in which death occurs by violent means, external to the man, and against or without intention or concurrence of will on the part of the man, death may probably be called an accident. . . . 'An injury may be said objectively to be accidental,

though subjectively it is not; and, if it occurs without the agency of the insured, it may logically be termed accidental, though it was brought about designedly by another person.' . . . There is, upon authority, hardly room for controversy as to the rightfulness of the action of the court below in refusing to charge the jury that death by hanging at the hands of a mob was not an accident.''

Whether an injury is accidental, is to be determined from the standpoint of the person injured. If the injury comes to him through external force, not of his choice or provocation, then as to him the injury is accidental.

The only cases referred to, holding to the contrary, are Briggs Hotel Co. v. Accident & Liability Ins. Co., Ltd., 213 Ill. App. 334 (Intermediate Appellate Court); and Commonwealth Casualty Co. v. Headers, 118 Ohio, 429, 161 N. E. 278.

Appellant contends, further, that if the policies involved, by their terms, cover Pendergraft's injury, they are void, because their effect would be to furnish a motive to appellee, the insured, to violate the law. In other words, if the policies are construed so as to bring within their terms a willful, wanton, and unwarranted assault, they are violative of public policy and void; that such a contract would be an incentive to the insured to violate the law. To sustain that position appellant refers to numerous authorities which hold that the courts will not enforce a contract based on an immoral or illegal object. Appellant cited no authorities directly in point.

In considering this question, it must be borne in mind that appellee did not itself commit the unlawful assault upon Pendergraft, although it was responsible therefor, because it was committed by its agent within the scope of his authority. The supreme court, in its opinion in that case (Alden Mills v. Pendergraft, 149 Miss. 595, 115 So. 713, 714), used this language:

"It does not appear that the appellant specifically authorized Goldman to employ violence in inducing the laborers to be content with their wages; nevertheless, the appellant is liable for the use which the jury here found was made by him of violence for that purpose. If the act complained of was in furtherance of the master's business, and within the course of the servant's employment, the master will be liable therefor, although it was in excess of the authority conferred by the master on the servant."

The evidence in that case showed that appellee had no part in the assault on Pendergraft; it neither authorized nor sanctioned it—it took place without appellee's knowledge or consent. It was, therefore, an assault committed by an agent, and not participated in by the principal. The question is, Can a principal protect himself from such unlawful acts of his agent? The policies themselves are valid on their face. They do not expressly undertake to indemnify appellee against its own unlawful acts. It is true that a policy of insurance indemnifying the insured against damages because of the violation of the criminal laws is void. But, where a policy is legal on its face, and does not undertake to indemnify the insured against the consequences of his own illegal acts, it is not void because its effect is to indemnify the insured against the consequences of the illegal or criminal acts of others, without participation on the part of the insured. 36 C. J. 1060 (Liability Insurance). In Waters v. Merchants' Louisville Ins. Co., 11 Pet. 213, 221, 9 L. Ed. 691, the supreme court held that there was nothing unreasonable, unjust, or inconsistent with public policy in allowing an insured to insure himself against all losses from perils "not occasioned by his own personal fraud." "One may lawfully insure another against the consequences of such acts (illegal acts) committed by servants and employees, if such acts are not directed by, or participated in, by the insured." Taxicab Motor Co. v.

Pacific Coast Casualty Co. of San Francisco, Cal., 73 Wash. 631, 132 P. 393. If this were not so, bonds taken to insure against the misappropriation or embezzlement of funds by employees generally would be void.

In U. S. Fidelity & Guaranty Co. v. Bank, 150 Miss. 386, 116 So. 605, 608, it was contended that the insured participated in the defalcation of his agent, for which fraud recovery was sought. On this point, the court used this language: "The language of the bond contract is that selected by the company issuing it for a consideration. If ambiguous, it must be construed most strongly in favor of the one indemnified."

In Fireman's Fund Ins. Co. v. Haley, 129 Miss. 525, 92 So. 635, 636, 23 A. L. R. 1470, the court held that the indemnity policy there involved protected the insured even though he was violating the speed laws of the state at the time of the injury. The court said: "If the plaintiff were exceeding either the thirty mile or the ten mile speed statute . . . and thereby violating both of these statutes, this would not prevent him from recovering upon this policy. There is no provision in the policy providing for non-liability in case at the time of an accident the insured is violating the speed laws of the state." Conithan v. Royal Ins. Co., 91 Miss. 386, 45 So. 361, 362, 18 L. R. A. (N. S.) 214, 124 Am. St. Rep. 701, 15 Ann. Cas. 539, involved a fire insurance policy in which the indemnity was against destruction by fire. The insured ran a bawdy house, and the furniture was used in furtherance of that illegal inn. This court, in discussing the question, used this language:

"In our judgment, the only question presented by this record is whether or not this contract of insurance is void, as against public policy, because placed upon property and household furniture used by the insured in a bawdy house. Was this contract in aid of an illegal and immoral business so directly as to make the contract void? . . . 'If the direct purpose of the contract is

to effect, advance, or encourage acts in violation of law, it is settled that the policy is void. But it is equally well settled that a mere illegal use made of the premises, there being no provision of the policy applicable, and no design by means of insurance to promote an unlawful enterprise, does not affect the right of the insured to recover.' . . . Where a contract of insurance is made in good faith and the premiums paid, and the purpose of the insurance is not to effect, advance, or encourage acts in violation of the law, the policy is not void. . . . To defeat the action on the policy it is necessary to hold that the policy itself is an immoral contract, against public policy as tending to promote the business of maintaining a lewd house."

To the same effect is Ætna Ins. Co. v. Heidelberg, 112 Miss. 46, 72 So. 852, L. R. A. 1917B, 253.

We are of opinion that there is no merit in appellant's other contentions, and that they are not sufficiently serious to call for a discussion by the court.

Affirmed.