JAMES, J.,
for the Court:
¶ 1. Stacey Hall appeals the Lowndes County Circuit Court’s grant of summary judgment in favor of Mi Toro # 2, a Mexican restaurant, and its owner, Antonio Garcia. She raises one issue on appeal: whether the circuit court erred in granting summary judgment to the non-defaulting defendants, Mi Toro and Garcia, after granting a default judgment to a codefen-dant, Julian Lopez. Upon review, we find no error and affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On July 1, 2010, John Hall was driving his motorcycle on Highway 45 *127 North. As he approached the intersection of Highway 45 and 31st Avenue North, Lopez made a left turn in front of John, striking and killing John instantly. Lopez was intoxicated at the time, with a blood-alcohol content of .227.
¶ 3. John’s former wife, Stacey, filed suit on behalf of the wrongful death beneficiaries [1] against Mi Toro, Garcia, and Lopez. She alleged that Lopez was employed at Mi Toro as a bus boy, and that he was' in the course and scope of employment at the time of the collision. Stacey’s claims against Mi Toro and Garcia were based on vicarious liability (respondeat superior) and negligent entrustment.
¶4. On October 1, 2010, Lopez was served with process. On October 2, 2010, Garcia and Mi Toro were served with process. On October 29, 2010, Mi Toro and Garcia separately filed answers. Lopez never filed an answer to the complaint.
¶ 5. On February 1, 2011, Stacey filed an application to the circuit clerk for entry of default against Lopez for his failure to plead, answer, or otherwise defend. The clerk entered a docket entry of default. On February 15, 2011, the circuit court entered a default judgment against Lopez for his failure to plead or otherwise defend.
¶ 6. On February 18, 2011, Mi Toro and Garcia filed a motion to set aside the default judgment entered against Lopez and to hold the entry of default in abeyance. On May 26, 2011, Stacey filed her response to the motion to set aside the default judgment. On June 15, 2011, an agreed order was entered setting a hearing on the motion to set aside the default judgment for August 3, 2011. On August 13, 2011, the circuit court entered an order, holding that: (1) the default judgment entered against Lopez would not be set aside and would remain in full force and effect; and (2) the assessment of damages against Lopez would not go forward prior to trial and would be held in conjunction with the trial.
¶ 7. On September 2, 2011, Mi Toro and Garcia filed a motion for summary judgment, arguing that there was no genuine issue of material fact because: Lopez did not work at Mi Toro on the day of the collision; Lopez was not in the course and scope of his employment at the time of the collision; and neither Mi Toro nor Garcia supplied Lopez with the vehicle he was driving at the time of the collision. On September 13, 2011, an order was entered setting a hearing on the motion for summary judgment for October 6, 2011. On September 23, 2011, Stacey filed her response to the motion for summary judgment. On October 3, 2011, Mi Toro and Garcia filed a rebuttal in support of their motion for summary judgment. On October 5, 2011, Mi Toro and Garcia filed a supplement to their motion for summary judgment. On October 6, 2011, a hearing was held on Mi Toro and Garcia’s motion for summary judgment.
¶ 8. On October 25, 2011, the circuit court entered an order granting summary judgment in favor of Mi Toro and Garcia, finding that Stacey had failed to produce sufficient evidence to create a genuine issue of material fact as to whether Lopez was acting within the course and scope of his employment with Mi Toro at the time of the collision. The order reads, in pertinent part, as follows:
In their motion, [Mi Toro and Garcia] argue that Lopez was neither acting within the scope of his employment nor present at Mi Toro ... on the date that his collision occurred[; therefore, they] *128 cannot be held liable for Lopez’s actions under the doctrine of respondeat superi- or. To show that no genuine issue of material fact exists as to this issue, [Mi Toro and Garcia] have submitted time cards for the period of June 15, 2010[,] to July 15, 2010, including Lopez’s. These time cards show that the last time Lopez clocked in or out of work was at 10:29 p.m. on June 30, 2010. Also, [Mi Toro and Garcia] have submitted affidavits from nine of their employees!,] stating that they were at work on July 1, 2010[,] and at no time did they see Lopez. In addition to the affidavits of these nine employees!, Mi Toro and Garcia] also submitted the affidavits of the manager and assistant manager who were working at Mi Toro ... on July 1, 2010. Both men stated that Lopez was not working that day and that they did not see him in the restaurant. As a result of this evidence[,] the [c]ourt finds that [Mi Toro and Garcia] have shown that no genuine issue of material fact exists[J
¶ 9. On November 14, 2011, the circuit court entered an order and final judgment of dismissal with prejudice under Rule 54(b) of the Mississippi Rules of Civil Procedure. Stacey appealed the circuit court’s order granting summary judgment.
DISCUSSION
¶ 10. “We conduct a de novo review of a trial court’s grant or denial of a motion for summary judgment.” Parmenter v. J & B Enterprises, Inc., 99 So.3d 207, 213 (¶ 7) (Miss.Ct.App.2012). Under Rule 56(c) of the Mississippi Rules of Civil Procedure, summary judgment is proper “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Rule 56(e) further provides:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein.... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials in his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.
M.R.C.P. 56(e). In determining whether summary judgment was properly granted by a trial court, we view “the facts in the light most favorable to the nonmovant.” Parmenter, 99 So.3d at 213 (¶ 7). “The burden of demonstrating that there are no genuine issues of material fact is upon the movant, and the non-moving party must be given the benefit of every reasonable doubt.” Id.
¶ 11. It is well established that an “employer is responsible for the torts of its employee only when the torts are ‘committed within the scope of the employment.’ ” Id. at 215-16 (¶ 14) (quoting Favre v. Wal-Mart Stores, Inc., 820 So.2d 771, 773 (¶ 5) (Miss.Ct.App.2002)). In determining whether the tort was committed in the course and scope of employment, we consider the following:
whether it was done in the course of and as a means to the accomplishment of the purposes of the employment and therefore in furtherance of the master’s business. Also include in the definition of “course and scope of employment” are tortious acts incidental to the authorized *129 conduct. That an employee’s acts are unauthorized does not necessarily place them outside the scope of employment if they are of the same general nature as the conduct authorized or incidental to that conduct. However, a master is not liable for its employee’s actions if the employee “abandoned his employment and went about some purpose of his own not incidental to the employment.”
Id. at 216 (¶ 14) (internal citations and quotations omitted).
¶ 12. In the case before us, it is undisputed that Lopez was a bus boy at Mi Toro. However, the parties dispute whether Lopez was working on the day of the collision and whether Lopez was within the course and scope of his employment. Stacey argues that Lopez was working on the day of the collision, and she relies' solely on a newspaper article published on July 10, 2010, which stated that Lopez “was leaving his job at Mi Toro Mexican Restaurant— he’s since been fired from the restaurant— when he turned left onto 31st Avenue into [John’s] path. [John’s] motorcycle struck Lopez’s 2004 Dodge Stratus, causing [John] major head and chest trauma[,] which resulted in his death.” Mi Toro and Garcia contend that this article contained incorrect information. According to Mi Toro and Garcia, Lopez was not scheduled to work on the day of the collision; Lopez did not in fact work on the day of the collision; and Lopez was never even at Mi Toro on the day of the collision. Mi Toro and Garcia obtained an affidavit from Pedro Valencia, the computer hardware and software installer for Mi Toro, which explained that Lopez was not working on the day of the collision according to Mi Toro’s time-card system:
Attached as Exhibit 1 is the Employee Time Card and Job Detail for Mi Toro ... in Columbus, Mississippi, from June 15, 2010[,] to July 8, 2010. The system sold to Mi Toro ... was a five terminal Micros Res 3700. The system is used for ... clocking employees in and out of the work. The employee goes to the terminal, enters his/her employee code number[,] and enters whether he/she is clocking in or out. The information is stored in the system and cannot be changed or manipulated by anyone at Mi Toro. Periodically, the information in the system is recorded to DVDs, and the system is purged of the data.
From the information contained in the system, the total number of hours worked within a pay period is given to Mi Toro’s bookkeeper, who then issues payment to the employees.
Once the information is saved to DVD, the DVD is maintained at Mi Toro. No one at Mi Toro can access the data because it is I.D. code and password protected. I have the information to access data, but the owners and employees of Mi Toro do not.
In order to print the Employee Time Card and Job Detail document attached as Exhibit 1,1 first received the relevant DVD from Mi Toro. I then entered the I.D. code and password. Next, I entered the search parameters of June 15, 2010[,] to July 15, 2010. The attached report was retrieved, and I printed it. Exhibit 1 shows all hourly employees of Mi Toro in Columbus, Mississippi, who clocked in and/or out from June 15, 2010[,] to July 3, 2010. It shows the employee’s number, employee’s name, [and] the date of when the employee clocked [in] and clocked out.
The report shows that employee “211-Julian Lopez” last clocked in for Mi Toro on Wednesday, June 30, 2010, at 5:30 p.m., and last clocked out on June 30, 2010, at 10:20 p.m. The report shows that employee “211-Julian Lopez” did not clock in or clock out on Thursday, *130 July 1, 2010. If he had, it would be shown on Exhibit 1.
¶ 13. Mi Toro and Garcia also obtained affidavits from nine Mi Toro employees, and each employee stated: “On July 1st, 2010, I worked at the restaurant. At no time on that day did I see Julian Alvarez Lopez at the restaurant for any reason.” Additionally, Lopez himself executed an affidavit, which read, in pertinent part: “On July 1, 2010, I, Julian Alvarez Lopez, neither worked for, nor at the Mi Toro restaurant located [in] Columbus, Mississippi. In fact, I did not go to such restaurant at all for any purpose whatsoever on that day.”
¶ 14. Mi Toro’s manager, Gilberton Barreto, executed an affidavit explaining that he was in charge of setting the work schedules. Barreto’s affidavit further stated:
Julian Alvarez Lopez had the day off on July 1, 2010. He did not work for Mi Toro that day. At no time did I see him at Mi Toro on July 1, 2010.... At the time of the collision on July 1, 2010, Julian Alvarez Lopez was not running an errand or doing anything for Mi Toro. He was off work that day and, as far as I know, was doing personal things. He was not in the course and scope of his employment with Mi Toro. Also, he was not doing anything for [Garcia]. Garcia was not in Columbus on July 1, 2010[,] and, therefore, could not and did not request that [Lopez] do anything for him.... After the collision, I interviewed all of the employees of Mi Toro to determine whether any of them saw [Lopez] at Mi Toro on July 1, 2010. Each of them told me that [Lopez] had not been at Mi Toro for any reason that day.
¶ 15. Mi Toro’s assistant manager, Alejandro Cruz Mendez, signed an affidavit, which stated:
[Lopez] did not work at Mi Toro on July 1, 2010, or come to the restaurant for any reason while I was there.
At no time on July 1, 2010, or any time before that, did I ask [Lopez] to do anything for the restaurant that day. At the time of his collision on July 1, 2010, he was not doing anything on behalf of the restaurant. He had the day off that day and, as far as I know, he was taking care of personal business.
¶ 16. Based on the affidavits presented by Mi Toro and Garcia and the lack of evidence to the contrary, we cannot say that there was a genuine issue of material fact as to whether Lopez was in the course and scope of his employment at the time of the collision. Although Lopez was an employee of Mi Toro, there was no evidence that he was running errands for Mi Toro at the time of the collision. Further, Lopez never clocked in or out that day, and no one saw Lopez at the restaurant that day. Because Lopez was not working that day or doing anything in furtherance of — or incidental to — Mi Toro’s business, he could not be considered in the course and scope of his employment at the time of the collision. Therefore, summary judgment was properly granted, and we affirm.
¶ 17. THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ„ CONCUR. BARNES, J., NOT PARTICIPATING.

. According to Stacey’s discovery responses, the wrongful-death beneficiaries were John’s children: Jonathon Hall, Courtney Hall, and Colden Hall.